STATE OF MICHIGAN
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ATTAR 2018, LLC;
HOPE 2014, LLC;
INVESTMENT REALTY SERVICES, LLC
and those similarly situated

                        Plaintiffs,

v.

CITY OF TAYLOR

                  Defendant.          File No:  19-10199

                                      Hon. LINDA V. PARKER

_____/

Law Offices of Aaron D. Cox, PLLC
Aaron D. Cox (P69346)
Attorney for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
aaron@aaroncoxlaw.com

Mark K. Wasvary, PC
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
markwasvary@hotmail.com

Howard & Howard Attorneys, PLLC
H. William Burdett, Jr. (P63185)
Michelle D. Champane (P80917)
Attorneys for Defendant
450 West Fourth Street

Royal Oak, MI 48067
248-723-0467
Bb2@h2law.com
mdc@h2law.com
_____/

## PLAINTIFFS' FIRST AMENDED CLASS-ACTION COMPLAINT AS OF RIGHT

NOW COMES ATTAR 2018, LLC, HOPE 2014, LLC, & INVESTMENT REALTY SERVICES, LLC on behalf of all others similarly situated, by and through the undersigned attorneys from THE LAW OFFICES OF AARON D. COX, PLLC and MARK K. WASVARY, PC, and states for their First Amended Complaint as follows:

## INTRODUCTION

1. Plaintiffs challenge the City of Taylor's (the "City") policy, practice, and custom of imposing unlawful grass cutting and yard maintenance fees to Plaintiffs who own real property in the City.

2. Plaintiffs, and those similarly situated, are the current and former owners or managers of real property in the City that have been wrongly charged with fees under the City's Ordinances.

3. Plaintiff Attar 2018, LLC owns the property commonly known as 15665 Kerstyn, Taylor, MI; Plaintiff Hope 2014, LLC owns the property commonly known as 25978 Superior, Taylor, MI; and Plaintiff Investment Realty Services, LLC owned and/or manages the properties commonly

known as 7521 Katherine, Taylor, MI and 27051 Joan, Taylor, MI (Collectively the "Property").

4. The State of Michigan under the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like Taylor to adopt certain laws, codes, or rules for real-property regulations.

5. MCL 117.3 (K) specifically addresses the adoption of certain building codes:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk

in compliance with state law requiring that records of public bodies be made available to the general public.

6. Pursuant to the Home Rule City Act the City has adopted the International Property Maintenance Code ("IPMC") in Section 8-44 of the City's codes and ordinances. The IPMC, in turn, governs the maintenance of existing structures in the City.

7. One section of the IPMC that the City amended relates to the City's handling of weeds. Of specific importance to this lawsuit is §8.45 of the City's Property Maintenance Code modifying IPMC 302.4, which reads as follows:

> All premises and exterior property shall be maintained free from weeds or plant growth in excess of eight inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, leaves, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.
>
> Upon failure of the owner or agent having charge of a property to cut and destroy weeds **after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3** and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

(the "Weeds Ordinance") (emphasis added).

8. The City has also adopted a companion ordinance to the Weeds Ordinance. Chapter 20, Article IV of the City's Codes permits the City to enter onto an owner's land, after providing written notice by mail or by posting the property at City Hall, and abate a nuisance. §20-148 and §20-149 permits the City to abate the alleged nuisance by hiring an outside vendor. §20-148 and §20-149 also permits the City to assess a special assessment to the property owner.

(the "Nuisance Ordinance")

9. Punishment and the placement of any unpaid liabilities resulting from punishment are required to be handed down in the form of civil infractions that would be adjudicated by a court of competent jurisdiction. Such adjudication would likewise provide an owner with an opportunity to appear before a neutral arbiter and contest the allegation that they either received proper notice of the alleged violation, that an alleged violation even existed, or that an alleged violation was not timely cured within the timeframes set forth by the Nuisance Ordinance.

10. The Nuisance Ordinance provides the City with the purported ability to charge to owners only the costs of abatement and to place those costs of abatement on the owner's tax records as a special assessment.

11. The City does not issue civil infraction violations to Plaintiffs and other owners for alleged violations of the Weed Ordinance and/or Nuisance Ordinance.

12. The City instead issues homeowners an invoice for alleged services provided to the owner, along with a $250.00 administrative fee.

13. The City's Fees are charged administratively and without City council's individualized review of the actual costs expended in abating an alleged nuisance.

14. There is no administrative or judicial hearing to determine the propriety of the City's actions in abating an alleged nuisance.

15. There is no administrative or judicial hearing to determine the propriety of the City's charges for an alleged violation of the Weeds Ordinance or the Nuisance Ordinance.

16. There is likewise no post-deprivation due process afforded to Plaintiffs, or any other, to challenge the propriety or adequacy of the charges levied against them.

17. In the event that an owner fails or refuses to pay the invoices the alleged costs of abatement PLUS an arbitrary $250.00 administrative fee (the "Fees) are placed on the owner's tax rolls as a special assessment.

18. There is likewise no mechanism for appeal or court review of these Fees as they are not a final administrative order appealable under the Michigan Constitution.

19. Plaintiffs believe that the City has issued in excess of 3000 invoices (the "Invoices") for Fees to owners of real property in the City since January of 2013. These invoices were charges by the City for grass cutting and debris removal under the Weeds Ordinance and/or the Nuisance Ordinance.

20. The Invoices for weed removal generally range from $280.00 to $300.00, depending on the size of the lot, for each invoice. The actual cost to the City to cure any alleged violation of their ordinances ranges from $30.00 to $50.00.

21. The Invoices for debris removal range from $545.00 or more, depending on the alleged amount removed. The actual cost to the City to cure any alleged violation of their ordinances are frequently as low as $185.00.

22. Any Invoices the City issues under its Weeds Ordinance or Nuisance Ordinance always include a $250.00 administrative fee payable to the City regardless of what the City paid to cure the alleged violation.

23. The City did not perform any of the nuisance abatement referenced in the Invoices by its own staff, departments, or employees. Instead, the City has

hired numerous third-party vendors ("Vendors") to perform the Invoice's referenced abatements.

24. The City's Invoices do not reflect the actual costs of performing the referenced abatements charged to the City by Vendors.

25. The City's Invoices almost without exception charge an amount that is between six-to-nine times greater than the amount the City paid to Vendors.

26. There is no notice on the Invoices to the owners that unpaid Invoices become a tax lien on the owners' property.

27. There is no notice on the Invoices to the owners that they have any right to challenge the Invoices in any way.

28. There is no notice on the Invoices that refers to any ordinance upon which it is based.

29. There is, in fact, no process, procedure, or mechanism by which an owner or person who receives an Invoice can challenge the Invoice in any way.

30. There is no rational relationship between the City's Invoices and the actual expenses incurred by the City in paying Vendors to abate the alleged nuisances.

31. There is no rational relationship between the $250.00 administrative fee charged by the City where it is not based on the costs of providing an alleged service.

32. The City's Fees are demands for payment and the consequence of failure to pay is a lien in the form of an additional tax obligation to the homeowner, which if not paid would result in the foreclosure of the homeowner's property under the Michigan General Property Tax Act. Any payment of the Fees by any person is also involuntary for this reason.

33. The City's Fees and Invoices likewise provide no mechanism by which the City is required to notify the owners that any unpaid invoices are being rolled over to their taxes as a special assessment.

34. Moreover, the City's Invoices are prohibited by MCL 141.91.

35. The doctrine of ultra vires further precludes a city from engaging in a course of conduct where it lacks the authority to do so by Constitution, Statute, or other law. The City has no lawful authority to charge the amounts in the Invoices.

36. All owners subject to the conduct of the City pay the charges involuntarily as the Defendant collects funds under the threat of lien for which the property would be subject to forfeiture for failure to pay.

37. Owners, like Plaintiffs, that refuse to pay the unconstitutional charges have the amounts placed on their tax bills and then face the penalty of foreclosure and the taking of their property.

38. Plaintiff Attar, 2018 and Hope 2014 received invoices from the City for Fees

under the Weeds Ordinance and/or the Nuisance Ordinance in August of 2018 for their respective properties.

39. The invoices received by Plaintiffs were for the actual costs alleged to have been paid to a vendor and a $250.00 "Admin Cost."

40. Plaintiff Attar 2018, LLC was invoiced $860.00 for alleged violations.

41. Plaintiff Hope 2014, LLC was invoiced $1,170.00 for alleged violations.

42. Representatives for Plaintiffs Attar 2018, LLC and Hope 2014, LLC had reached out to City representative Matt Bonza multiple times between August 2018 and November 2018 requesting a hearing or other means to challenge the Invoices. Despite repeated attempts to dispute these invoices and to get the City to remove the charges Mr. Bonza and the City refused to do so, refused to provide any information to address the complaints alleged, and ceased responding to emails. There has been no communication between representative for Plaintiffs Attar 2018, LLC and Hope 2014, LLC at any time since November 2018.

43. The last time the City actually *responded* to an email inquiry as to disputing the fees was on September 24, 2018. The email from Defendant merely promised to stop cutting grass at the properties in the future. The email gave no method to appeal the fees.

44. Plaintiffs Attar 2018, LLC and Hope 2014, LLC denied liability under the Invoices and refused to pay same. Notwithstanding and as more fully set forth above, Plaintiffs were never provided an opportunity to defend against the allegations and the unpaid invoices were assessed to the Plaintiffs' winter 2018 tax bills. Those tax bills were subsequently paid by those Plaintiffs to avoid a tax lien that could eventually lead to tax forfeiture.

**Exhibit 1**

45. Subsequent to the filing and service of this lawsuit, subsequent to the appearance of their counsel, and with the intent to subvert Plaintiffs' case by avoiding Plaintiffs' counsel, the City of Taylor mysteriously submitted "tax-refund" checks directly to Plaintiffs Attar 2018, LLC and Hope 2014, LLC on March 8, 2019. No correspondence accompanied these checks to explain what they were for or why they were being issued.

46. The City then likewise, and even more mysteriously, altered their tax-reporting records to reflect that the Fees Attar 2018, LLC and Hope 2014, LLC paid and disputed were not even a part of the public record anymore.

**Exhibit 2**.

47. The City's clear intention to subvert Plaintiffs' counsel and Plaintiffs' claims, and to otherwise hide their wrongdoing is further demonstrated with another property owned by Investment Realty Services commonly known as

6056 Dudley, Taylor, MI: which was not involved in this lawsuit but was referenced in the emails between Attar 2018, LLC and Hope 2014, LLC's representative and City representative Matt Bonza; which likewise had paid taxes including disputed amounts that were Invoiced; and where the City subsequently refunded those payments on March 8, 2019 without explanation and attempted to hide the fact by removing the charges altogether from their public records. **Exhibit 3**.

48. Similarly, Plaintiff Investment Realty Services, LLC received an Invoice from the City for Fees under the Weeds Ordinance in October 2016 for the property commonly known as 7521 Katherine, Taylor, MI. Plaintiff Investment Realty Services, LLC also received an Invoice under the Nuisance Ordinance in March 2019 for a property at 27051 Joan, Taylor, MI.

49. Plaintiff Investment Realty Services, LLC denied liability under these Invoices as well, but without any opportunity to contest the charges in any way they were forced to pay the Invoices in order to prevent liens from being placed on the properties in question.

50. Without question, because no representative from Investment Realty Services, LLC was in communication with the Mr. Bonza and because Investment Realty Services, LLC's address at 7521 Katherine, Taylor, MI

was not referenced in the emails from August 2018 through November 2018, the City failed to complete their cover-up and failed to refund Investment Realty Services, LLC with their unlawfully paid charges for 7521 Katherine.

## I.     PARTIES

51. Plaintiff Attar 2018, LLC ("Attar") is a Michigan Limited Liability Company and owns the property commonly known as 15665 Kerstyn, Taylor, MI.

52. Plaintiff Hope 2014, LLC ("Hope") is a Michigan Limited Liability Company and owns the property commonly known as 25978 Superior, Taylor, MI.

53. Plaintiff Investment Realty Services, LLC ("IRS") is a Michigan Limited Liability Company who does business in the City of Taylor and has owned property within the City of Taylor at various times.

54. Plaintiffs bring this class action on behalf of themselves and all others who are similarly situated by virtue of having been charged unlawful Fees by the City of Taylor under the Weeds Ordinance and/or the Nuisance Ordinance.

55. Defendant City of Taylor is a municipal corporation located within Wayne County in the State of Michigan.

## II.    JURISDICTION AND VENUE

56. Plaintiffs incorporate the preceding paragraphs.

57. Jurisdiction by this Court over Plaintiffs' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

58. Supplemental jurisdiction over all state law claims is proper pursuant to 28 USC § 1367.

59. Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendant resides, where a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred, and where a substantial part of all properties subject to the action are located.

60. As additional Class Plaintiffs are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## III.    CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS

61. Plaintiff incorporates the preceding paragraphs.

62. It is unconstitutional to deprive a person of their property without due process of law. U.S. Constitution 5th Amendment & 14th Amendment; Michigan Constitution 1963 Article 1, Section 17.

63. Plaintiffs have a constitutionally protected property right in the money that

belongs to them.

64. Plaintiffs have a constitutionally protected property right to have their properties be free from unlawful liens and encumbrances.

65. The City's Weed Ordinance and Nuisance Ordinance unlawfully deprive Plaintiffs of their property and property rights without any opportunity to be heard or challenge the Fees in any way.

66. The City is unlawfully charging and collecting Fees in violation of their own ordinances.

67. The City deprives Plaintiffs, and those similarly situated, of any pre-deprivation or post-deprivation procedures related to the charging of the Fees. More specifically, the City issues its Fees to Plaintiffs in the form of an unchallengeable invoice; there is no hearing or possibility of appeal of the Fees; the Invoices do not reference any law upon which they are based; there is no mechanism created by ordinance permitting a challenge of the Invoices; the Invoices themselves are issued contrary to the City's own ordinances; and if Plaintiffs fail to pay the Fees they are placed as a lien on their Property thereby depriving Plaintiff of their money and potentially the property as a whole.

68. There is otherwise no lawful mechanism by which Plaintiffs are afforded a hearing at any time to challenge the propriety of the City's conduct, let alone

the Fees charged.

69. The City of Taylor violates the rights of Plaintiffs and others similarly situated by charging Fees that are hundreds of dollars greater than the expense paid by the City; as a result Plaintiffs have incurred damages. Left unchecked, the City will continue to charge Fees in violation of the due process rights of Plaintiffs and others similarly situated.

70. The City of Taylor further violates the rights of Plaintiffs and others similarly situated by charging Fees without providing proper notices as required by the Weeds and/or Nuisance Ordinances; as a result Plaintiffs have incurred damages.

71. The City of Taylor further violates the rights of Plaintiffs and others similarly situated by charging the Fees without first obtaining approval from City council; as a result Plaintiffs have incurred damages.

72. The City of Taylor further violates the rights of Plaintiffs where their own ordinance limits the amounts that could ever be lawfully charged to an owner to the "expenses incurred in the destruction of noxious weeds," or those actual expenses incurred in abating a nuisance, yet the City adds a $250.00 "Admin Cost" to every Invoice when not expressly authorized by ordinance or other law; as a result Plaintiffs have incurred damages.

## COUNT TWO
## VIOLATION OF THE EIGHTH AMENDMENT

73. Plaintiffs incorporate the preceding paragraphs.

74. The Eighth Amendment to the United States Constitution precludes excessive fines. The United States Supreme Court has applied the Eighth Amendment equally to civil and criminal proceedings.

75. The Eighth Amendment limits the Government's ability to extract payments as punishment for some offense. See generally *Austin v United States*, 509 US 602 (1993).

76. As set forth above the City has and continues to charge Plaintiffs, and those similarly situated, Fees that are not rationally related to the expenses incurred by the City. These Fees are charged/levied unlawfully.

77. Any fine that is unlawful is, by its very nature, an "excessive fine" and should be afforded the protections of the Eighth Amendment.

78. Plaintiffs, and those similarly situated have been damaged by paying such excessive fines and/or having such excessive fines placed as liens on their properties.

## COUNT THREE
## VIOLATION OF DUE PROCESS AND FOURTEENTH AMENDMENT
### (Deprivation of Appellate Rights)

79. Plaintiffs incorporate the preceding paragraphs.

80. The Michigan Constitution provides a right of appeal from a final order of an administrative body.

81. The City's issuance of the Fees invoices is not a final order as contemplated by the Michigan Constitution.

82. As a result, Plaintiffs, and those similarly situated, have no right to appeal the issuance of the Fees to any court.

83. This deprivation is especially important where, as here, the failure to succumb to the City's demands for payment results in a lien being placed on the homeowner's property; failure to pay the lien results in the property being foreclosed by the taxing entity.

84. Plaintiffs have been harmed as a result of the City's unconstitutional conduct.

## COUNT FOUR
## UNJUST ENRICHMENT/RESTITUTION

85. Plaintiffs incorporate the preceding paragraphs.

86. The City has been illegally charging and collecting Fees from Plaintiffs and those similarly situated under the Weed Ordinance and/or Nuisance Ordinance scheme as set forth above.

87. As more fully set forth above, the City has acquired and/or is in possession of funds that it is not entitled to retain.

88. The City likewise has deprived Plaintiffs of the use of their funds and

interest that would have accumulated on same while it unlawfully retained funds paid by Plaintiffs Attar 2018, LLC and Hope 2014, LLC.

89. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant and (2) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" elements).

90. Michigan Law expressly exempts claims of unjust enrichment from Michigan's Governmental Tort Liability Act. See *In Re Bradley Estate*, 494 Mich 367 (2013); *Genesee County Drain Commissioner v Genesee County*, 321 Mich App 74 (2017).

91. The City has been unjustly enriched by collecting fees from Plaintiffs and those similarly situated under their unconstitutional Weed and/or Nuisance Ordinance scheme.

92. The City unconstitutionally extracted at least $860.00, plus interest, from Plaintiff Attar 2018, LLC under their unconstitutional scheme and as a result Plaintiff has incurred additional costs and attorney's fees.

93. The City unconstitutionally extracted at least $1,170.00, plus interest, from Plaintiff Hope 2014, LLC under their unconstitutional scheme and as a result Plaintiff has incurred additional costs and attorney's fees.

94. The City unconstitutionally extracted at least $825.00, plus interest, costs,

and attorney's fees from Plaintiff Investment Realty Services, LLC under their unconstitutional scheme.

95. The City's extraction of money from Plaintiffs and those similarly situated was done to the detriment of the Plaintiffs and the putative class and to the benefit of the City.

96. It would otherwise be unjust to permit the City to retain funds obtained under their unconstitutional scheme.

97. In *Baker v. Portsmouth*, 1:14-CV-512 (United States District Court for the Southern District of Ohio) and *Thompson v Oakwood*, 3:16-CV-169 (United States District Court for the Southern District of Ohio) the Courts concluded that claims for the refund of amounts paid under an unconstitutional ordinance requires that the fees be returned to those who have paid them.

98. Where a governmental entity has collected fees under an unconstitutional ordinance or statute equity requires that the government make restitution for the unjustly obtained fees.

99. Plaintiffs, and all those similarly situated, are entitled to a refund of all Fees paid to Defendant under the City's Weeds Ordinance and/or Nuisance Ordinance.

100.    Michigan law likewise provides that an assumpsit remedy may be

maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment. While the cause of action for assumpsit has been abolished, the remedy of assumpsit remains.

101. The City has unconstitutionally extracted potentially millions of dollars from other unsuspecting and similarly situated members of the putative class.

102. Defendant has benefitted from this unjust enrichment to the detriment of Plaintiffs and those similarly situated.

103. Plaintiffs, individually and on behalf of those similarly situated, seek reimbursement for monies paid to the City along with such interest that would have accumulated on those paid fees, court costs, post-filing interest, and attorney's fees.

104. Plaintiffs further seek a court order for cessation of such illegal and inappropriate charges that were paid/levied and restitution back to such time as applicable under the relevant statute of limitations.

## COUNT FIVE
## DECLARATORY JUDGMENT INVALIDATING LIENS & INJUNCTIVE RELIEF

105. Plaintiffs incorporate the preceding paragraphs.

106.     An actual controversy exists between Plaintiffs and the City regarding the City's unlawful Fees and liens.

107.     As set forth above, the City has the ability to place a lien on Plaintiffs' Properties for failing to pay the Fees. The lien is in the form of the Fees being placed on the tax rolls.

108.     As the liens are based on unlawful fees as further set forth in this Complaint above, such liens should be declared invalid and removed.

109.     As more fully set forth above, Plaintiffs have a likelihood of success on the merits of this case where Defendant is violating Plaintiffs', and those similarly situated's, constitutional right to due process.

110.     Plaintiffs' and those similarly situated have suffered, and will continue to suffer irreparable harm where their constitutional rights are being violated by the City of Taylor. See *Overstreet v Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 578 (Fed. 6th Cir. 2002).

111.     The equities favor the Plaintiffs in this case where they seek to stop the City of Taylor's unconstitutional conduct. Conversely, the City's lacks equity in this matter where it is acting in an unconstitutional manner and causes monetary damages and deprivations of those constitutional rights.

112.     Likewise, the court in *Overstreet*, reasoned that "the public has a strong interest in protecting constitutional rights." *Id*.

113.    Under the facts and circumstances as set forth in this Complaint Plaintiffs are entitled to preliminary and permanent injunctive relief.

**COUNT SIX**
**VIOLATION OF 42 USC 1983**

114.    Plaintiffs incorporate the preceding paragraphs.

115.    Plaintiffs and the class of those similarly situated have a constitutional right to challenge the City's unlawful Inspection Ordinances and the due process violated rights violated therein.

116.    As set forth above Defendant then proceeded to prosecute and collect fines and fees from Plaintiffs, and those similarly situated, in violation of their due process rights.

117.    The City has deprived homeowners within its City of property and rights related thereto and is liable to the Plaintiffs and those similarly situated pursuant to 42 USC 1983.

118.    Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

**IV.    CLASS ALLEGATIONS**

119.    Plaintiffs incorporate the preceding paragraphs.

120.    Plaintiffs and putative class members have suffered and continue to suffer similar harm due to having their property taken by the City without

minimum due process and, as otherwise set forth above, unlawfully. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiffs and class members are then faced with multiplying levies for failure to pay improperly charged/levied Fees.

121.    <u>Class Definition.</u> Plaintiffs seeks to certify the following class

A) All persons and entities who have been charged/levied Fees by the City under the Weeds Ordinance or Nuisance Ordinance from January 21, 2013 through final judgment in this matter, or such longer period as may be allowed by law.

122.    <u>Numerosity.</u>  The proposed classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is not now known, Plaintiff believes the class number is in excess of 250 members. These members may be readily identified from Defendant's own records.

123.    <u>Commonality.</u> There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

124.    Among the questions of law or fact common to the class are the following:

a)    Did the City deprive Plaintiffs of any pre-deprivation or post-deprivation due process rights to challenge the Fees charged by the City?

b)      Did the City unlawfully charge/assess Fees to Plaintiffs and those similarly situated?

c)      Does the City's charging of the Fees violate Michigan law?

d)      Do the Fees violate the City's own ordinances?

125.      <u>Typicality.</u>  The harm suffered by Plaintiffs is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiffs are the same as those of the other class members. Resolution of these common questions will determine the liability of the Defendant to Plaintiffs and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

126.      Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

127.      <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

128.      Plaintiffs' co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiffs' claims and

has previously been certified to represent a class in multiple lawsuits involving the IPMC and other Constitutional issues.[1]

129.    This class action is maintainable under Federal Rule of Civil Procedure 23(b).

130.    The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a)    The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

[1] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

b) The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

131. The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole.  Specifically, Defendant has and continues to deprive homeowners of their right to due process to challenge the Fees; Defendant also has and continues to unlawfully charge/assess the fees to property owners.

132. The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

133. The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

134.    In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

135.    It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

136.    Plaintiffs are not aware of any members of the proposed class that have filed similar litigation nor are Plaintiffs aware of any pending similar litigation in which the City is a Defendant.

137.    The class action is the appropriate method for the fair and efficient adjudication of the controversy.   The legal and factual bases for the Plaintiff's claims are the same as for the claims of all class members.   The only difference between individual claims is the severity of the harm and resulting damages.   Adjudicating this case on a class-wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps hundreds) turning on the same questions of law and fact.   The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading its litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims.   Further,

the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## VIII.  RELIEF REQUESTED

WHEREFORE, on behalf of themselves and others similarly situated, Plaintiffs request the following relief:

A.     That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiff to represent the class and certifying Plaintiff's counsel to represent the class;

B.     The declaratory and injunctive relief as applicable and specified above;

C.     An award of damages, including all applicable interest, in an amount to be determined at trial;

D.     An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988, 42 USC §1983 or on other grounds;

E.     An award of an incentive fee to the named Plaintiff for having the courage to come forward and challenge the City's ordinances and the manner in which they are administered; AND/OR

F.     Any other relief as necessary to redress the violation of Plaintiff's rights secured by the Constitution and laws.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: March 27, 2019

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com

## CERTIFICATE OF SERVICE

Plaintiffs' First Amended Class Action Complaint was served upon the parties and attorneys of record on the date and time set forth in the ECF filing and service system.

Respectfully submitted by:
THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

Dated: March 27, 2019

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com