UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTAR 2018, LLC, HOPE 2014, LLC,
and INVESTMENT REALTY SERVICES, LLC,

        Plaintiffs,

                                Civil Case No. 19-10199
v.                             Honorable Linda V. Parker

CITY OF TAYLOR,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

This putative class action lawsuit was filed on January 21, 2019, to

challenge the City of Taylor's alleged "policy, practice, and custom of imposing

unlawful grass cutting and yard maintenance fees" on property owners.  (*See* Am.

Compl. ¶ 1, ECF No. 9 at Pg ID 45.)  In an Amended Complaint filed March 27,

2019, Plaintiffs bring claims against the City of Taylor ("City") under 42 U.S.C.

§ 1983 for alleged violations of their Fourteenth Amendment procedural due

process rights (Count One), their Eighth Amendment right to be free from

excessive fines (Count Two), and denial of their Fourteenth Amendment appeal

rights (Count Three).[1]  Plaintiffs also assert a state law unjust enrichment claim

_____

[1] Plaintiffs assert a violation of § 1983 in Count Six of their Amended Complaint,
but this is based on the constitutional violations alleged in the first three counts of

(Count Four).  The matter is presently before the Court on the City's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 12.)  The motion has been fully briefed.  (ECF Nos. 13, 15.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."

---

their pleading.  Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Plaintiffs' pleading also includes a separate count in which they seek a declaration invalidating the liens and an injunction (Count Five).  These are remedies and not separate causes of action, however.  *See, e.g., Riley–Jackson v. Ocwen Loan Servicing*, No. 13-cv-12538, 2013 WL 5676827, at *5 (E.D. Mich. Oct.18, 2013) (Rosen, C.J.); *see also Terlecki v. Stewart*, 754 N.W.2d 899, 912 (2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action.").  "It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." *Terlecki*, 754 N.W.2d at 912.  The Court is therefore dismissing Counts Five and Six of Plaintiffs' Amended Complaint.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d

86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may take judicial notice only " 'of facts which are not subject to reasonable dispute.' " *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

## II.      Factual and Procedural Background

### A.      The City's Weed Control Policies

Pursuant to the authority granted under Michigan's Home Rule City Act, Mich. Compiled Laws § 117.3(k), the City adopted the 2012 International Property Maintenance Code ("IPMC") and enacted amended sections of the IPMC in its Code of Ordinances. (Am. Compl. ¶¶ 4-6, ECF No. 9 at Pg ID 46-47); *see also* https://www.cityoftaylor.com/231/Building-Department. Section 302.4 of the IPMC ("Weed Ordinance"), as amended in Section 8.43 of the City's Code of Ordinances, reads:

Premises and exterior property shall be maintained free from weeds or plant growth in excess of eight inches. Noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3[2] and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

*See* https://library.municode.com/mi/taylor/codes/code_of_ordinances; *see also*

https://www.hs-sd.org/assets/docs/uploads/Planning-

---

[2] IPMC Section 106.3 provides, in relevant part:

**Prosecution of violation**. Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a *strict liability offense*. If the notice of violation is not complied with, the *code official* shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, …. Any action taken by the authority having jurisdiction on such *premises* shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

*See https://www.hs-sd.org/assets/docs/uploads/Planning-Administrator/icc.ipmc.2012.pdf* (emphasis in original).

Administrator/icc.ipmc.2012.pdf.  The City hires outside vendors to remedy

violations of the Weed Ordinance.  (Am. Compl. ¶ 23, ECF No. 9 at Pg ID 50-51.)

Weed control also is addressed in Section 20-148 of the City's Code of

Ordinances.  *See* https://library.municode.com/mi/taylor/codes/code_of_ordinances.

This provision states that when weed violations are found, the City "shall provide

written notice or, in the alternative, by posting on the property and in City Hall, to

the owner, agent or occupant of any land on which [the violation occurs]" that the

weeds must be removed within ten days after service of the notice.[3]  *Id*. § 20-

148(a).  Section 20-148  further states that if the owner fails to "destroy the noxious

weeds or cause them to be destroyed," the City will enter the property and do so and

that the City will continue to remove the weeds, "at the owner's expense, until it

receives actual written notice by the owner that he shall remedy the [violation] on

an ongoing basis."  *Id*.  Section 20-148 provides that "[a]ny expense incurred in the

destruction shall be paid by the owner of the land according to the rate schedule

approved by the city council" and that "[t]he city shall have a lien against the land

for the amount of the expense."  *Id*.  "[I]f the owner fails to pay the expense, the

lien shall be enforced in the same manner provided by law or enforcement of

---

[3] The same provisions are repeated in Sections 20-264 and 20-266 of the City's
Code of Ordinances.

delinquent special assessment tax liens." *Id.* A violation of the Weed Ordinance constitutes a municipal civil infraction. *Id.* § 20-148(c).

The City's website reflects that if a violation of the Weed Ordinance is not corrected by the deadline provided on the notice left at the property, "[t]he property owner will be responsible for all costs associated with the cutting as well as a $250 administration fee each time the property is cut." http://www.cityoftaylor.com/1363/Grass-cutting-and-weed-control. The website includes images of the stickers the City states it posts to warn property owners of a violation.[4] *Id.* According to the website, an orange sticker "is a warning notice" alerting property owners that they have ten days to correct the violation.[5] *Id.* A green sticker informs property owners that their property has been added to the grass cutting list.[6] *Id.* The letter the City purportedly sends property owners whose property is identified as having overgrown or noxious weeds also is posted on its website.[7] *See* http://www.cityoftaylor.com/DocumentCenter/View/266/Property-Maintenance-Grass-Removal-Letter-PDF?bidId.

_____

[4] Unless evidenced elsewhere, the Court makes no finding at this juncture as to whether these stickers were posted at Plaintiffs' properties.
[5] A copy of the orange sticker can be found at Attachment "A" of this decision.
[6] A copy of the green sticker can be found at Attachment "B" of this decision.
[7] The letter can be found at Attachment "C" of this decision. By referencing this letter, the Court is not suggesting that the City sent and/or that Plaintiffs received it unless the factual allegations in Plaintiffs' Amended Complaint indicate otherwise.

**B.      Plaintiffs & Their Receipt of City Invoices for Weed Control Violations**

Plaintiff Attar 2018, LLC ("Attar") owns property commonly known as 15665 Kerstyn, Taylor, Michigan ("Kerstyn property"). (Am. Compl. ¶ 3, ECF No. 9 at Pg ID 45.) Plaintiff Hope 2014, LLC ("Hope") owns property commonly known as 25978 Superior, Taylor, Michigan ("Superior property"). (*Id.*) Plaintiff Investment Realty Services, LLC ("IRS") owns two properties in Taylor, Michigan: 7521 Katherine ("Katherine property") and 27051 Joan ("Joan property"). (*Id.*)

In August 2018, Attar and Hope received invoices from the City for fees under the Weeds Ordinance and/or Nuisance Ordinance. (*Id.* ¶ 38, Pg ID 52-53.) The invoices indicated that they were for the actual costs the City paid to a vendor to remedy the weed violations, plus a $250.00 "Admin Cost." (*Id.* ¶ 39, Pg ID 53.) The invoice the City sent Attar was for $860.00. (*Id.* ¶ 40, Pg ID 53.) The invoice the City sent Hope was for $1,170.00. (*Id.* ¶ 41, Pg ID 53.) Plaintiffs assert that the amount charged for the services of the City's vendor are between six to nine times greater than the amount the City actually paid the vendor. (*Id.* ¶ 25, Pg ID 51.)

Plaintiffs allege that the invoices they received did not inform them that unpaid invoices would become a tax lien on their properties. (*Id.* ¶ 26, Pg ID 51.) Plaintiffs also allege that the invoices did not inform them that they had a right to challenge the charges. (*Id.* ¶ 27, Pg ID 51.) Nor did the invoices, according to Plaintiffs, refer to any ordinance upon which the charges were based. (*Id.* ¶ 28, Pg

ID 51.)  Plaintiffs do not indicate in their pleading whether written notice was

posted at their properties before the City hired its vendor to eradicate or cut the

weeds.

Plaintiffs allege that representatives for Hope and Attar reached out to the

City's representative, Matt Bonza, multiple times via email between August and

November 2018, requesting a hearing or other means to challenge the invoices.  (*Id*.

¶ 42, Pg ID 53.)  According to the emails, which are attached to Defendant's motion

to dismiss, Mr. Bonza is the Deputy Director of the City's Department of Public

Works.[8]  (Def.'s Mot. Ex. A, ECF No. 12-2.)  Plaintiffs claim: "Despite repeated

attempts to dispute these invoices and to get the City to remove the charges Mr.

Bonza and the City refused to do so, refused to provide any information to address

the complaints alleged, and ceased responding to emails."  (Am. Compl. ¶ 42, ECF

No. 9 at Pg ID 53.)

The emails reflect that on August 27, 2018, Mr. Bonza wrote Attar's and

Hope's representative, Jason Cross with Garner Properties, asking for information

about the properties invoiced, including whether a ticket or Routine Property

Maintenance List Notice (*see* Attachment B) was received before the invoices.

(Def.'s Mot. Ex. A at 1, ECF No. 12-2 at Pg ID 126.)  In an email on the same date,

---

[8] The emails are referenced in Plaintiffs' Amended Complaint and are central to
their procedural due process claim.  Therefore, the Court concludes that it may
consider them in deciding the City's motion.  *See supra*.

Mr. Cross responded that tickets from the 23rd District Court were received with respect to two of four properties (those being Hope's Superior property and property at 6661 Burr) and that a notice was included with one of the tickets (the property on Burr).  (*Id.*)  Email exchanges continued through September 2018, in which Mr. Bonza informed Mr. Cross that he was still working on the invoices.  (*Id.*)  Mr. Cross asked in two emails whether there was something else he needed to do to file a dispute, to which Mr. Bonza indicated he was working on the invoices.  (*Id.*)

At some point, the unpaid invoices were assessed to Attar's and Hope's Winter 2018 tax bills.  (*Id.* ¶ 44, Pg ID 54.)  They paid the invoices to avoid a tax lien that could lead to a forfeiture.  (*Id.*)  On January 21, 2019, Attar and Hope initiated this lawsuit against the City.  (Compl., ECF No. 1.)  On March 8, 2019, the City refunded the amounts Attar and Hope paid for the alleged weed violations.  (*Id.* ¶ 45, ID 54.)  The City also deleted the assessed fees from the property tax records.  (*Id.* ¶ 46, Pg ID 54.)

Apparently in response, Plaintiffs filed an Amended Complaint on March 27, 2019, adding IRS as a plaintiff.  (*Id.*)  IRS also received weed cutting invoices from the City.  (*Id.* ¶ 48, Pg ID 55.)  In October 2016, the City invoiced IRS for the Katherine property.  (*Id.*)  In March 2019, IRS received an invoice from the City for the Joan property.  (*Id.*)  IRS paid those invoices, despite contesting liability, to

avoid liens on the properties.  (*Id*. ¶ 49, Pg ID 55.)  Those payments have not been refunded.  (*Id*. ¶ 50, Pg ID 54-55.)

## III.    Applicable Law and Analysis

### A.      42 U.S.C. § 1983 Generally

Plaintiffs' allegations concerning the violations of their constitutional rights are brought against the City pursuant to § 1983.  To prove the City's liability under this, Plaintiffs must show: (1) the violation of one of their constitutional rights and (2) the City's responsibility for that violation.  *Doe v. Claiborne Cty.*, 103 F.3d 495, 505-06 (1996).  The City cannot be found liable for constitutional violations simply because the violations were committed by a City employee or agent.  *Id*. at 507 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) (explaining that a municipality cannot be liable under § 1983 based on respondeat superior).  Instead, Plaintiffs must show that "an officially executed policy, or the toleration of a custom within the [City] leads to, causes, or results in the deprivation of a constitutionally protected right."  *Id*. (citing *Monell*, 436 U.S. at 690-91).

The Sixth Circuit has identified "four avenues" for establishing "a municipality's illegal policy or custom."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  Those are: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of

tolerance or acquiescence of federal rights violations." *Id.* (citations omitted). In its motion to dismiss, the City argues that "nothing in Plaintiffs' [Amended] Complaint supports the imposition of municipal liability[.]" (Def.'s Br. in Supp. of Mot. at 11, ECF No. 12 at Pg ID 108.) The Court does not agree.

It appears from Plaintiffs' Amended Complaint that they are not challenging the legality of the Weed Ordinance. It would be difficult for Plaintiffs to succeed on a facial challenge to the ordinance in light of the Sixth Circuit's decision in *Shoemaker v. City of Howell*, 795 F.3d 553 (2015), which found an almost identical ordinance constitutional. Plaintiffs also do not allege facts suggesting that the asserted constitutional violations resulted from actions by officials with "final decision-making authority."

However, Plaintiffs do allege a "policy, practice, and custom" of the City sending weed violation invoices to property owners for amounts which Plaintiffs claim are disproportionate and unlawful, without sufficient notice and an opportunity to challenge those invoices. Simply asserting that the City has such a "policy, practice, and custom" would not be sufficient to survive the City's motion to dismiss. *See Twombly*, 550 U.S. at 555 (more than "labels and conclusions" are needed to survive a motion to dismiss). Nevertheless, Plaintiffs' Amended Complaint describes the City's alleged mis-handling of violations for four

properties, which this Court finds sufficient to show a pattern and practice to avoid dismissal.

The City contends that Plaintiffs' factual allegations instead show "a series of inconsistent acts regarding [its] enforcement of the Ordinance and assessment of Fees." (Def.'s Br. in Supp. of Mot. at 12, ECF No. 12 at Pg ID 109.) The City refers specifically to Mr. Cross's acknowledgment in his email to Mr. Garner that a Routine Property Maintenance Notice was received for some properties, but not others, and that one of the assessed fees "was justified." (*Id.*, citing Ex. A.) It is not evident that this notice was the same Routine Property Maintenance Notice posted on the City's website and thus what information was conveyed to Plaintiffs in the notice they received. And while Mr. Cross acknowledged that "there was a lapse in cutting" at the Superior property, he did not admit that the amount charged was lawful and proportionate.

The Court therefore turns to whether Plaintiffs' Amended Complaint adequately pleads facts establishing the violation of their constitutional rights.

### B. Fourteenth Amendment- Procedural Due Process

To establish a violation of their procedural due process rights, Plaintiffs must show the deprivation of life, liberty, or property without adequate procedural protection. *See Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.), *cert. denied*, 537 U.S. 1019 (2002). The City argues that Attar and Hope did not suffer a deprivation of

their property because the City refunded the fees they paid. (Def.'s Br. in Supp. of Mot. at 16, ECF No. 12 at Pg ID 113.) With respect to IRS, the City argues that no deprivation was suffered in connection with the Joan property because IRS alleges only that it received an invoice from the City, not that it paid the invoice. (*Id.*) As to the Katherine property, the City argues that the invoice allegedly received was from October 2016, and IRS does not allege that it made any attempt to challenge it. (*Id.* at 16 n.10.)

The City cites several cases to support their argument that Attar and Hope cannot establish a due process violation where they were only temporarily deprived of their property. These cases do not hold, however, that property owners cannot state a viable procedural due process claim when the deprivation of their property is only temporary. Instead, what these cases hold, is that the temporary seizure of property may be undertaken without a pre-deprivation hearing, *provided* the property owner is afforded an opportunity to request a prompt post-impoundment hearing. *See Ross v. Duggan*, 402 F.3d 575, 583, 586-87 (6th Cir. 2004) ("Because the post-impoundment procedures afforded by the Michigan authorities guaranteed the ultimate protection of property rights in seized vehicles for their owners, procedural due process requisites were satisfied, which in turn legitimated the pre-release temporary property deprivation and its attendant minor inconveniences and procedural costs for the owner."); *Sickles v. Campbell Cty., Ky.*, 501 F.3d 726, 730

(6th Cir. 2007) (county's policy of taking funds from an inmate's account without a predeprivation hearing is not unconstitutional). Plaintiffs allege that the City fails to inform property owners of any available remedy to contest the charges.

Contrary to the City's assertion, Plaintiffs allege in their Amended Complaint that IRS received invoices for the Katherine property and Joan property *and* "without any opportunity to contest the charges . . . were forced to pay the Invoices." (*See* Am. Compl. ¶¶ 48-49, ECF No. 9 at Pg ID 55.) The Court has no basis from which to conclude, as the City asserts, that IRS "knew how to [challenge the invoice for the Katherine property] and had ample means to do so[]" when it received and paid the City's invoice for that property in October 2016. (*See* Def.'s Br. in Supp. of Mot. at 16 n.10, ECF No. 113.)

The City offers no other arguments for why the alleged deprivation of the Plaintiffs' property is not "within the ambit of the Fourteenth Amendment's protection[.]" *Shoemaker*, 795 F.3d at 559 (city acknowledged that the $600 fee it imposed for the plaintiff's violation of its weed ordinance was a property interest protected under the Due Process Clause); *Kochis v. City of Westland*, No. 18-11455, 2019 WL 3801562, at *4 (E.D. Mich. Aug. 13, 2019) (city acknowledged that the amount it invoiced the plaintiff for the removal of debris was a protected property interest). The Court turns to whether the City afforded adequate process prior to and following the deprivation.

15

As the Sixth Circuit explained in *Shoemaker*: "At its essence, due process can be summarized as 'the requirement that a person be given notice of the case against him and an opportunity to meet it.' " 795 F.3d at 559 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976)) (additional citations and alterations omitted). " 'Due process is flexible and calls for such procedural protections as the particular situation demands.' " *Matthews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In *Matthews*, the Supreme Court identified several factors to weigh in deciding how much process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. "[T]he sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required. *Leary v. Daeschner*, 228 F.3d 729, 743 (6th Cir. 2000).

The City maintains that Plaintiffs received notice similar to that afforded in *Shoemaker*, which the Sixth Circuit concluded was constitutionally sufficient.[9] (Def.'s Br. in Supp. of Mot. at 17-18, ECF No. 12 at Pg ID 114-15.) The City then lists four methods by which it claims Plaintiffs received notice:

> (1) door stickers, which provided the City's phone number and the Ordinance number; (2) invoices for grass-cutting fees, which provided the Ordinance name, the City's phone number, and the amount of the Fees; (3) Property Maintenance List Notices, which included the Ordinance number, the fee schedule for violations, and the number to call with any questions or concerns; and (4) property tax invoices that included special assessment fees indicated by a separate line item for "Weeds Spec Asmt."

(*Id.*) To find that Plaintiffs received all of these notices and that the notices contained all of this information would require the Court to look beyond the materials it may consider in deciding a Rule 12(b)(6) motion.

The allegations in Plaintiffs' Amended Complaint do not suggest that they received door stickers or property tax invoices. The materials the Court may consider fail to reflect that any notifications received by Plaintiffs contained the asserted information, advising Plaintiffs "of the case against [them] and [their] opportunity to meet it. *Matthews*, 424 U.S. at 348. True, Plaintiffs' pleading

---

[9] *Shoemaker* was an action brought by a property owner in another Michigan municipality, challenging that city's almost identical weed ordinance. *Shoemaker*, 795 F.3d at 557.

reflects that they received invoices for grass-cutting fees. Yet, there is no basis for the Court to find that those invoices provided the relevant ordinance name or the City's phone number. Similarly, while Mr. Cross acknowledged that a Property Maintenance List Notice was received at one of the properties, there is no basis for the Court to find that it was the same notice as Attachment B or that it included the ordinance number, the fee schedule for violations, or the number to call with questions or concerns.

In comparison, the court could look beyond the plaintiff's pleading in *Shoemaker*, as it was ruling on a summary judgment motion. 795 F.3d at 556. The evidence presented showed that the plaintiff "was clearly aware that the City considered him to be in violation of [its weed] Ordinance." *Id*. at 560. This evidence included: (1) the City's Code Enforcement Officer left no less than three door-hanger notices at the property, informing the plaintiff that his lawn was in violation of City Code § 622.02, (2) on two occasions, the same city official mailed the plaintiff a "Notice of Ordinance Violation" letter advising the plaintiff of (a) the alleged violation of the ordinance, (b) the substance of the ordinance, (c) the time allowed to remedy the violation, and (d) the various fees associated with noncompliance; and (3) the plaintiff and the city's Code Enforcement Officer spoke by telephone, at which time the plaintiff said "he wanted to be ticketed for the violation in order to challenge the Ordinance in court." *Id*. at 557-58.

The district court in *Kochis* also was ruling on the defendant's summary judgment motion. 2019 WL 3801562, at * 1. There, however, the court denied summary judgment on the plaintiff's procedural due process claim. *Id.* at *7. Although there was evidence that the plaintiff received one notice from the city indicating that he was in violation of the city's debris ordinance—a notice which included the phone number and e-mail address for a city department—the court found it unclear whether "that the notice provided [the p]laintiff with enough information for him to investigate his procedural remedies or the potential consequences of his violation." *Id.* at *6.

As it is not evident from Plaintiffs' pleading that sufficient notice was provided to them, the Court is denying the City's motion to dismiss their procedural due process claim.

### C.    Eighth Amendment – Excessive Fine Claim

The Eighth Amendment states that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause " 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.' "[10] *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting

_____

[10] The Supreme Court only recently addressed the question of whether the Eighth Amendment's Excessive Fines Clause applies to the States, and concluded that it does. *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 682 , 686-87 (2019) ("The Excessive

*Austin v. United States*, 509 U.S. 602, 609-10 (1993)).  The clause applies only to fines "directly imposed by, and payable to, the government" and only to fines that are punitive rather than wholly remedial.  *Austin*, 509 U.S. at 609-10.

Here, there is nothing to suggest that the City's invoices were punitive.[11] The invoices sought reimbursement for the costs to the City of correcting Plaintiffs' violations of the Weed Ordinance.

### D.     Fourteenth Amendment – Deprivation of Appellate Rights

Plaintiffs allege that the City's issuance of the fee invoices are not a final order, as contemplated by the Michigan Constitution, and thus they have no right to appeal the assessed fees to any court.  They assert that this constitutes a deprivation of their Fourteenth Amendment appellate rights.  As indicated in *Shoemaker*, however, the fees and fines charged to Plaintiffs by the City are reviewable under Article VI, § 28 of the Michigan Constitution.  *Shoemaker*, 795 F.3d at 562.  To the extent Plaintiffs are claiming that they did not receive notice of their right to appeal, this claim is subsumed within their procedural due process claim.

---

Fines Clause is … incorporated by the Due Process Clause of the Fourteenth Amendment.).

[11] Notably, in their Amended Complaint, Plaintiffs do not allege that the City was incorrect in finding that they were in violation of the Weed Ordinance.

### E. Unjust Enrichment/Restitution

Plaintiffs allege that the City has acted unlawfully by charging and collecting fees from property owners under the Weed Ordinance. (Am. Compl. ¶ 86, ECF No. 9 at Pg ID 61.) Plaintiffs claim that they therefore are entitled to a refund of those fees under an unjust enrichment theory. (*Id.* ¶¶ 86-104, Pg ID 61-64.) Under Michigan law, this theory provides recovery when the defendant has received a benefit from the plaintiff and it would be inequitable for the defendant to retain the benefit absent reasonable compensation. *See Daimler-Chrysler N.A., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 925 (6th Cir. 2008) (citing Michigan law).

The Weed Ordinance is not unconstitutional, however. *See Shoemaker*, 795 F.3d 553. Plaintiffs in fact have not asserted a facial challenge to the ordinance. As such, the City has not wrongfully invoiced property owners for violations of the ordinance. What Plaintiffs are claiming is that the procedures in the ordinance have not been adhered to, resulting in a denial of their right to receive notice of an alleged ordinance violation and the opportunity to contest it. To the extent Plaintiffs are entitled to a refund of the fines they have paid, this is dependent on their procedural due process claim. They fail to state a viable unjust enrichment claim.

## IV. Conclusion

The Court is dismissing Plaintiff's declaratory judgment and injunction claim (Count Five) and "violation of 42 U.S.C. § 1983" claim (Count Six) because these are not independent causes of action. The Court concludes that Plaintiffs fail to allege a viable Eighth Amendment claim (Count Two). Their Fourteenth Amendment deprivation of appellate rights claim (Count Three) is not distinct from their Fourteenth Amendment procedural due process claim. The Court, therefore, is also dismissing Counts Two and Three of Plaintiffs' Amended Complaint.

At this juncture, the Court is not able to discern what notice the City provided Plaintiffs in connection with the fines imposed for the Weed Ordinance violations. The Court is not concluding that the Weed Ordinance is unconstitutional on its face, as it believes *Shoemaker* negates such a finding. Here, however, it is not evident at this stage of the proceedings whether the City adhered to the procedures set forth in its ordinance or has a custom, practice, and/or policy of failing to do so. In other words, Plaintiffs allege facts to state a viable claim that the Weed Ordinance, as applied by the City, is unconstitutional.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss (ECF No. 12) is

**GRANTED IN PART AND DENIED IN PART** in that all of the counts in

Plaintiffs' Amended Complaint, except Count One, are **DISMISSED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 3, 2020

**Attachment A**



# Attachment B



**NOTICE**

**CITY OF TAYLOR ORDINANCE VIOLATION**
**23555 GODDARD, TAYLOR, MI 48180**
**(734) 287-6550**

Property Address: _____
_____ Vacant

**ROUTINE PROPERTY MAINTENANCE LIST NOTICE**

You are in violation of the following City of Taylor Ordinance:

**ORD/CHPT. SEC**

_____13-477/20-263:20-266          Blight/junk and debris

_____13-478/20-148:20-150          Noxious Weeds/High Grass

**Effective Immediately**, this property is subject to the routine removal of noxious weeds and/or blight maintenance until the Ordinance Department has received written notice of owner remedy on an ongoing basis as indicated per the Code of Ordinances. This property is subject to penalty as enforceable by the ordinance.

_____
Ordinance/Building Officer

_____       _____
Date                Time

## Attachment C

**RICK SOLLARS**
*Mayor*

**CYNTHIA A. BOWER**
*City Clerk*

**MICHELLE TOCCO**
*Treasurer*

# City of Taylor

**23555 GODDARD ROAD**
Taylor, MI 48180

PHONE: (734) 287-6550
www.cityoftaylor.com

**CITY COUNCIL**

**TIMOTHY WOOLLEY**
*Chairman*

**ANGELA CROFT**
*Chair Pro-Tem*

**DANIEL BZURA**
**CHARLEY JOHNSON**
**CAROLINE PATTS**
**BUTCH RAMIK**
**ANGELA WINTON**

## 2019 ROUTINE PROPERTY MAINTENANCE LIST NOTICE

Date _____

Dear Property Owner

The City of Taylor has maintained noxious weeds and/or blight removal on the property located at _____, parcel ID _____.

Pursuant to Ordinance No. 20-148 through 20-150, the owner of land on which noxious weeds are found growing shall destroy the weeds and keep such premises free and clear of noxious weeds at all times. If the owner has failed to keep such premises free and clear, the city may then enter upon the premises and destroy by cutting such weeds.

**The city shall continue to eliminate noxious weeds, at the owner's expense, until it receives actual written notice by the owner that he shall remedy the noxious and high weeds on an ongoing basis.**

**<u>The city may cut weeds as deemed necessary and charge the cost to the property owner.</u>**

**A person who violates this section shall be responsible for a municipal civil infraction, which shall be punishable by a civil fine of not less than $150 for the first offense, not less than $250 and up to $500 for the second offense, and not less than $500 and up to $1,000 each for each additional or subsequent offense, plus costs and all other remedies available by statute.**

Pursuant to Ordinance No. 20-263 through 20-266, no person shall maintain or permit to be maintained any of these causes of blight or blighting factors upon any property in the city owned, leased, rented or occupied by such person:

(1) permitting or allowing grass or weeds to grow to a height of 8" or more
(2) the storage of junk automobiles, except in a completely enclosed building
(3) the storage of building materials unless a building permit has been issued
(4) the storage or accumulation of junk, trash, rubbish or refuse of any kind, except domestic as to not create a nuisance,
(5) the existence of any structure or part of a structure no longer habitable, nor useful for any other purpose for which it may have been intended.
(6) the existence of any vacant dwelling, garage, or other outbuilding which is not kept secured to protect or prevent vandalism

(cont'd)

(7) the existence of a partially complete structure unless construction is completed within a reasonable time.

**The city shall continue to eliminate causes of blight or blighting factors, at the owner's expense, until it receives actual written notice by the owner that he shall remedy the blight or blighting factors on an ongoing basis.**

**A person who violates this section shall be responsible for a municipal civil infraction, which shall be punishable by a civil fine of not less than $150 for the first offense, not less than $250 and up to $500 for the second offense, and not less than $500 and up to $1,000 each for each additional or subsequent offense, plus costs and all other remedies available by statute.**

Please be advised that, **effective immediately**, the property located at _____ is subject to the routine removal of noxious weeds and/or blight maintenance until the Ordinance Department has received written notice of owner remedy on an ongoing basis as indicated per the Code of Ordinances.

**Each occurrence of noxious weeds or blight removal is subject to the amount of the expense to clean up the property plus an administrative fee of $250.**

Any questions or concerns regarding this notice can be directed to the City of Taylor at 734.287.6550, Monday – Friday, 9 a.m. – 5 p.m.  All written notices shall be sent to City of Taylor, 23555 Goddard, Taylor, MI 48180, and Attention: Ordinance Department Blight Control.  This letter may be returned with your signature if you are the property owner of record or designee in order to accept current responsibility to remedy any future blight on the property.  However, this does not exclude the property from any future occurrences if the property is in violation of said ordinances.

Sincerely,

*City of Taylor Ordinance Department*

City of Taylor
Ordinance Department

I hereby acknowledge that my property has been and is subject to noxious weeds and/or blight removal.  Please accept this as written notice that I will remedy all noxious weeds and/or blight contributing to violation of Ordinance No. 20-148 through 20-150 and 20-263 through 20-266.  This does not exempt the property from any future occurrences should I fail to remedy the property, located at _____ ; parcel ID _____.


_____                    _____
Property Owner Signature                            Property owner (print name)


_____                    _____
Property Owner Phone Number                         Property Owner e-mail address